1
2
3
4
5
6
7
8
9          IN THE UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  DARRYL W. BROWN,                    )    No. C 09-4663 JSW (PR)
                                        )
13                    Petitioner,       )    **ORDER GRANTING**
                                        )    **EVIDENTIARY HEARING;**
14    vs.                               )    **REFERRING CASE TO FEDERAL**
                                        )    **PUBLIC DEFENDER FOR**
15  JAMES WALKER, Warden,               )    **ASSIGNMENT OF COUNSEL;**
                                        )    **STAYING PROCEEDINGS**
16                    Respondent.       )    **PENDING APPOINTMENT OF**
                                        )    **COUNSEL; INSTRUCTIONS TO**
17  _____      )    **CLERK**

18                           **INTRODUCTION**

19         Petitioner, a California prisoner proceeding pro se, seeks a writ of habeas corpus

20  pursuant to 28 U.S.C. § 2254.  This Court found that the petition stated a cognizable

21  claim for relief and ordered Respondent to show cause why the petition should not be

22  granted.  Respondent filed an answer contending that the petition was procedurally barred

23  and meritless.  Petitioner filed a traverse.  Having reviewed the papers and the underlying

24  record, the Court concludes that Petitioner is entitled to an evidentiary hearing in this

25  Court to determine: (1) the nature and extent of the putative conflict between Petitioner

26  and his trial attorney; and (2) whether that putative conflict deprived Petitioner of the

27  representation he was guaranteed by the Sixth Amendment.

28

                                        1

# BACKGROUND

The following statement of facts regarding the incident that gave rise to the challenged judgment of conviction against Petitioner is taken from the unpublished opinion of the California Court of Appeal:

> [Petitioner] and Norton Buff were housemates.  On October 14, 2005, [Petitioner] became upset when he could not find his sponge. After [Petitioner] began yelling at Buff's friend, Buff told him to "back off." [Petitioner] then grabbed Buff, pushed him against a wall, and punched him in the face.  [Petitioner] also told Buff that he was going to kill him.  Other individuals eventually separated [Petitioner] and Buff.  Buff suffered a broken nose.

*People v. Brown*, No. H031762, 2008 WL 3138211, at *1 (Cal. Ct. App. Aug. 7, 2008) (Resp't Ex. 6).

On April 27, 2006, the Santa Clara District Attorney filed an information charging Petitioner with felony assault by means likely to produce great bodily injury (Cal. Pen. Code § 245(a)(1))[1], with a sentencing enhancement for causing great bodily injury (§§ 12022.7(a), 1203(e)(3)).  (Clerk's Transcript ("CT") at 40-41) (Resp't Ex. 1).  The information also charged Petitioner with making a criminal threat (§ 422).  (*Id.* at 41.)

The information further alleged that Petitioner had sustained two previous "strike" convictions under California's "Three Strikes Law," (§ 667).  (*Id.* at 40.)  Petitioner's two "strike priors" stemmed from his convictions for rape and assault with intent to commit rape, (§§ 261(2), 220).  (*Id.*)  The information also noted that Petitioner had sustained a prior felony conviction for failing to register as a sex offender (§ 290), as well as for possession of a controlled substance (Cal. Health & Safety Code § 11350(a)).  (*Id.* at 42-43.)  As a result, the information alleged that Petitioner should receive a five-year sentencing enhancement for a serious prior felony and three one-year sentencing enhancements for prior prison terms, pursuant to the provisions of the Three Strikes Law. (*Id.* at 40.)

On May 1, 2006, after a preliminary hearing and at arraignment, Petitioner pled

---

[1] All statutory references are to the California Penal Code unless otherwise noted.

1   not guilty to both charges and denied all of the priors and sentencing enhancements

2   alleged in the information.  (*Id.* at 54.)

3          On June 26, 2006, Petitioner wrote an ex parte letter to the trial court requesting a

4   "*Marsden* hearing"[2] to express concerns he had with his court-appointed attorney.

5   Therein, he stated:

6          I've been having problems with my public defender[,] a Mr. Juan Lopez.
           I've already spoken to his supervisor Mr. Craig Kennedy[,] who was very
7          flippant and sarcastic over the phone.  Two or three months went by, [and] I
           spoke to a public defender who was making an appearance for Mr. Lopez
8          earlier this month [and] I told her briefly about my problem with Mr. Lopez
           [and] she suggested a Mars[d]en hearing, [and] that is w[h]y I am
9          addressing this letter to you personally, from what was told me by the
           public defender.  Only a Judge can grant [a] Mars[d]en hearing, [and] that is
10         what I am asking for.  Thank you.  Please respond ASAP.

11   (CT at 230A.)  It is unclear when the trial court actually received the letter as it was not

12   filed until August 17, 2006 when there was a court date in the case.  *Brown*, 2008 WL

13   3138211, at *1.  It does appear that Petitioner had to have sent the letter prior to that date,

14   however, because Petitioner did not appear for the August 17, 2006 court date.  *Id.*

15          In the interim, on July 10, 2006, Petitioner pled guilty to both charges and

16   admitted all of the alleged priors and sentencing enhancements.  (CT at 83-84.)  In

17   exchange for his guilty plea, the prosecution agreed to dismiss the great bodily injury

18   sentencing enhancement.  (Reporter's Transcript ("RT") at 3-4) (Resp't Ex. 2).  During

19   the plea colloquy, Petitioner indicated that he had enough time to discuss the case with his

20   attorney, that he understood his sentence, and that he was entering his plea freely and

21   voluntarily.  (*Id.* at 5-6.)  The proceedings were, however, halted on several occasions so

22   that defense counsel could explain parts of the plea and its ramifications to Petitioner.

23   (*Id.* at 11-13.)  During one exchange, Petitioner inquired as to how he could receive jail

24   time for crimes for which he had already served time.  (*Id.* at 13.)  Nothing in the clerk's

25   minutes or transcript of this proceeding indicates that the trial court was aware of

26

27          [2] Under California law, when a defendant requests substitution of court-appointed
     counsel, the trial court has a duty to listen to his or her specific reasons for the request.  *People v.*
28   *Marsden*, 2 Cal. 3d 118, 123-25 (1970).  This in short-hand is known as a "*Marsden* motion" or
     a request for a "*Marsden* hearing."  *See Schell v. Witek*, 218 F.3d 1017, 1021 (9th Cir. 2000).

1   Petitioner's request for a *Marsden* hearing.  (*See* CT at 83-84; RT at 1-16.)

2       On July 18, 2006, a probation officer interviewed Petitioner at the Santa Clara

3   County Main Jail to determine whether to recommend that his sentence include eligibility

4   for probation.  (CT at 188-230.)  In her report, the probation officer recounted that

5   Petitioner explained his desire for a *Marsden* hearing prior to entering his guilty plea and

6   that he did not fully understand the nature of his guilty plea:

7          [T]he defendant indicated he was upset with his Public Defender and that he
           had previously wanted a *Marsden* hearing.  He explained he did not know
8          his Strike Priors were being alleged until last week, as his attorney never
           informed him of this.  He believes that his Public Defender is working with
9          the District Attorney and the Judge against him.

10  (*Id*. at 194.)

11      As noted above, Petitioner's *Marsden* motion was then filed by the trial court on

12  August 17, 2006.  (*Id*. at 230A.)  The record indicates that a "*Romero* hearing"[3] had been

13  set for that same day, but Petitioner did not appear and the trial court continued the

14  hearing.  (*Id*. at 85.)  Approximately two months later, on October 19, 2006, the trial court

15  held the *Romero* hearing and denied Petitioner's motion to vacate his prior strikes.  (RT at

16  17-28.)  At the beginning of the hearing, the trial court made explicit note of the fact it

17  had "read and considered the report from the Adult Probation Department," which

18  contained the aforementioned statement regarding Petitioner's request for a *Marsden*

19  hearing.  (*Id*. at 18.)  After hearing from the prosecution and defense, the trial court then

20  sentenced Petitioner to two concurrent prison terms of 25 years to life for receiving a

21  third strike and a consecutive five-year prison term for the prior serious felony

22  enhancement.  (*Id*. at 25-26.)  The trial court also ordered Petitioner to pay $10,000 in

23  restitution.  (*Id*. at 26.)  The trial court dismissed the sentencing enhancements for prior

24

25

26  ─────────────────────

27      [3] Under California law, on motion by the parties or sua sponte, trial courts can vacate
    allegations of prior serious or violent felony convictions for purposes of the Three Strikes Law
28  during sentencing proceedings.  *People v. Superior Court (Romero)*, 13 Cal. 4th 497, 529-30
    (1996).  This in short-hand is known as a "*Romero* motion" or a "*Romero* hearing."  *See id.*

1   prison terms on account of Petitioner's mental illnesses.[4]  (*Id.*)  After the pronouncement

2   of the sentence, Petitioner personally inquired whether he would be heard as to the

3   restitution fund fine, but did not mention his *Marsden* motion.  (*Id*. at 27.)  At no point in

4   time did the trial court schedule a *Marsden* hearing, raise the issue to the parties, or make

5   a finding of abandonment or waiver regarding the motion.  (*See* RT at 18-28.)

6        On August 15, 2007, Petitioner filed a notice of appeal.  (CT at 238.)  On appeal,

7   Petitioner sought a reversal of judgment and remand to the trial court for a *Marsden*

8   hearing to determine the nature and extent of his complaints about his legal

9   representation.  (Resp't Ex. 3.)  On August 7, 2008, the California Court of Appeal

10  affirmed the trial court judgment on the grounds that Petitioner "abandoned his request

11  for substitute counsel," as evidenced by his failure to personally raise the issue in open

12  court at both the change of plea hearing and the *Romero* hearing.  *Brown*, 2008 WL

13  3138211, at *2-3.  The appellate court also inferred support for their decision from the

14  probation officer's report, which stated that Petitioner had "previously" wanted a

15  *Marsden* hearing, not that he remained interested in one at the time of his court

16  appearances.  *Id.* at *3.

17       On September 10, 2008, Petitioner sought review in the California Supreme Court,

18  which was summarily denied on October 16, 2008.  (Resp't Exs. 7-8.)  On October 1,

19  2009, Petitioner filed the instant petition.

## DISCUSSION

### A.   Standard of Review

22       Petitioner filed his federal habeas petition in 2009, so it is subject to the provisions

23  of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Under

24  AEDPA, this Court will entertain a petition for a writ of habeas corpus "in behalf of a

25  person in custody pursuant to the judgment of a State court only on the ground that he is

26  in custody in violation of the Constitution or laws or treaties of the United States."  28

27

28       [4] Petitioner suffers from schizophrenia, psychosis, bipolar disorder, acute anxiety, and the
    effects of polysubstance abuse.  (CT at 202; RT at 24, 26.)

U.S.C. § 2254(a).  The petition may not be granted with respect to any claim "adjudicated on the merits" in a state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d). To determine whether to apply "AEDPA deference" in this case, the Court must "[c]onsider which state court 'decision' [to] review, and whether that decision actually 'adjudicated' [Petitioner's] Sixth Amendment claim on the merits."  *Williams v. Cavazos*, 646 F.3d 626, 635 (9th Cir. 2011).  If this Court concludes that no state court adjudicated Petitioner's claim on the merits, then it must determine whether there is an adequate and independent ground of state law that should preclude collateral review as a matter of federalism and comity.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

      1.   <u>Framework</u>

      a.   *State Court Adjudications on the Merits under AEDPA*

     In general, a claim is adjudicated on the merits if there is "'a decision finally resolving the parties' claims . . . that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'"  *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001)).  "[A] state has 'adjudicated' a petitioner's constitutional claim 'on the merits' for purposes of § 2254(d) when it has decided the petitioner's right to post conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits."  *Lambert*, 393 F.3d at 969.

     After the Supreme Court's decision in *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 784-85 (2011), federal courts deciding habeas petitions must presume that state courts have adjudicated a constitutional claim on the merits.  But the *Richter* presumption only remains intact "in the absence of any indication or state-law procedural principles to

the contrary" that would give "reason to think some other explanation for the state court's decision is more likely." *Id.* The fact that a state court opinion completely omitted any citation to federal precedent is not a sufficient indication of a non-merits-based adjudication of a federal claim. *Williams*, 646 F.3d at 639 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)). This is because state court decisions that directly cite to "cases which themselves rested on Supreme Court precedent, and [where] the state court holdings were consistent with the reasoning of the cited cases," are also considered to have adjudicated a federal claim on the merits. *Baker v. Blaine*, 221 F.3d 1108, 1112 (9th Cir. 2000). This method of determining "indirect" state court adjudications on the merits is known as the *Baker* approach. *Williams*, 646 F.3d at 640.

Under Ninth Circuit precedent interpreting *Richter*, a summary denial by the California Supreme Court is not presumed an adjudication on the merits where it arises from a petition for discretionary appellate review of a decision by a lower state court. *Williams*, 646 F.3d at 636; *see also Camper v. Workers' Comp. Appeals Bd.*, 3 Cal. 4th 679, 679 n.8 (1992) ("[W]e reiterate the well-established rule in this state that a denial of a petition for review is not an expression of opinion of the [California] Supreme Court on the merits of the case.") In contrast, when the California Supreme Court exercises its habeas jurisdiction as opposed to discretionary appellate review, the merits of the claim are presumed to be adjudicated because the court has ruled upon an original petition and is not merely passing on the opportunity to review a lower state court's decision. *Williams*, 646 F.3d at 635-36. Therefore, after *Richter*, AEDPA deference is only necessarily applied to a summary denial when that summary denial is of an original state habeas petition. *Id.*

If a federal court concludes that no state courts have adjudicated a federal claim on the merits, then it must review the claim de novo. *Cone v. Bell*, — U.S. —, 129 S. Ct. 1769, 1784 (2009); *see also Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002). "[W]hen it is clear that the state courts did not reach the merits of the petitioner's constitutional claim, federal habeas review is not subject to the deferential standard that

applies under AEDPA . . . ." *Williams*, 646 F.3d at 637 (internal quotations and citation omitted). De novo review is appropriate in these rare circumstances because "the basic structure of federal habeas jurisdiction" is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Richter*, 131 S. Ct. at 787. "When those 'principal forum[s]' are provided the opportunity to adjudicate constitutional challenges but fail to do so, whether intentionally or inadvertently, the only remaining forum—the federal courts—must do so in the first instance." *Williams*, 646 F.3d at 637.

Upon de novo review, a federal habeas court reviewing a state court ruling ordinarily applies a harmless error standard, examining whether the error "had substantial and injurious effect or influence." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *see also Schell*, 218 F.3d at 1022. Under this standard, federal habeas petitioners obtain plenary review of their constitutional claims, but they are not entitled to collateral relief based on trial error unless they can establish that the error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637.

### b.   *The Adequate and Independent State Grounds Doctrine*

If a federal court finds that a constitutional claim was not adjudicated on the merits in the state courts, it will nonetheless refrain from review if the state decision denying relief rests upon a state law ground, procedural or otherwise, "that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729-30. A procedural bar to federal review arising from state law need not be confined to situations of procedural default, i.e. where a petitioner has failed to properly raise his claim before a state appellate court. *Id.* at 731-32. This is because the procedural default rule is a specific instance of the more general adequate and independent state grounds doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994).

Under the adequate and independent state grounds doctrine, a state procedural rule is sufficient to foreclose review of a federal question, but an inquiry into the adequacy of such a rule "is itself a federal question." *Douglas v. Alabama*, 380 U.S. 415, 422 (1965).

"To be 'adequate,' the state procedural bar must be '[c]lear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Melendez v. Pliler*, 288 F.3d 1120, 1124 (9th Cir. 2002) (quoting *Calderon v. U.S. Dist. Court*, 96 F.3d 1126, 1129 (9th Cir. 1996)). "A federal court 'should not insist upon a petitioner, as a federal procedural prerequisite to obtaining federal relief, complying with a rule the state itself does not consistently enforce.'" *Melendez*, 288 F.3d at 1124 (quoting *Siripongs v. Calderon*, 35 F.3d 1308, 1318 (9th Cir. 1994)); *see also Wells*, 28 F.3d at 1010. "Nor should the federal court enforce a bar grounded on a rule which is unclear or uncertain." *Melendez*, 288 F.3d at 1124 (citing *Morales v. Calderon*, 85 F.3d 1387, 1390-92 (9th Cir. 1996)). In addition, a state law procedural rule is not adequate to prevent federal review if the petitioner could not have been "deemed to have been apprised of [the rule's] existence" at the time he omitted the procedural step in question. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457 (1958). "In other words, we are barred from reviewing a state court decision resting on a procedural ground only if the petitioner could have known of the procedural requirement and yet still failed to follow it." *Moore v. Parke*, 148 F.3d 705, 709 (7th Cir. 1998).

  2. <u>Analysis</u>

   In order to determine the appropriate standard of review here, the Court must first resolve whether the opinion of either the California Supreme Court or the California Court of Appeal constituted an adjudication on the merits. *Richter*, 131 S. Ct. at 784-85. If there was no adjudication on the merits by either state court, then the Court must determine whether the ground for adjudication, construed as procedural or otherwise, is adequate and independent such that preclusion of collateral review is appropriate as a matter of federalism and comity. *Coleman*, 501 U.S. at 729-30. If the Court finds that the state bar is inadequate to preclude federal habeas review, *Douglas*, 380 U.S. at 422, then it will not apply AEDPA deference and will evaluate Petitioner's claim de novo, *Cone*, 129 S. Ct. at 1784.

    a. *The State Courts' Adjudication of Petitioner's Sixth Amendment*

*Claim*

The Court must first consider whether the California Supreme Court, as the state court of last review, adjudicated Petitioner's claim on the merits. *See Richter*, 131 S. Ct. at 784-85. The California Supreme Court denied review of Petitioner's claim in its discretionary appellate capacity, not as a court exercising original state habeas jurisdiction. (Resp't Exs. 7-8.) As such, it did not adjudicate Petitioner's claim on the merits under the federal standard set forth in *Richter* or the California standard set forth in *Camper*. *See Richter*, 131 S. Ct. at 784-85; *Camper*, 3 Cal. 4th at 679 n.8. Accordingly, this Court may look through the summary denial to the last reasoned state court opinion that addressed Petitioner's claim, *see Ylst*, 501 U.S. at 801-06, without yet having to apply AEDPA deference, *see Richter*, 131 S. Ct. at 784-85.

The only state court opinion to provide more than a summary denial of Petitioner's claim is the unpublished opinion of the California Court of Appeal. *Brown*, 2008 WL 3138211. If that opinion adjudicated Petitioner's Sixth Amendment claim on the merits, this Court will apply AEDPA's deferential standard to the instant petition. *See Williams*, 646 F.3d at 636-37. The California Court of Appeal affirmed the judgment of the state trial court on the grounds that Petitioner abandoned his *Marsden* motion. The appellate court did not reach the question of whether Petitioner's court-appointed attorney was constitutionally sufficient under the Sixth Amendment:

> Defendant argues that the trial court erred by failing to hold a hearing on his *Marsden* motion. We agree with the People's position that defendant abandoned this motion.
> When a defendant requests substitution of counsel, the trial court has a duty to listen to his or her specific reasons for this request. (*Marsden, supra*, 2 Cal.3d at ¶. 123-124.) "Although no formal motion is necessary, there must be 'at least some clear indication by defendant that he wants a substitute attorney.'" (*People v. Mendoza* (2000) 24 Cal.4th 130, 157, quoting *People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8.)
> The case of *People v. Vera* (2004) 122 Cal.App.4th 970 (*Vera*) is instructive on the issue of abandonment. In Vera, the defendant brought a *Marsden* motion. (*Vera*, at p. 975.) Before the defendant had the opportunity to present all his reasons for substitution of counsel, the trial court denied his motion. (*Vera*, at p. 976.) Though the trial court told the defendant that he could renew his motion at a later date, the defendant did not do so. (*Ibid.*) On appeal, the defendant argued that the trial court failed to consider all of the grounds on which he based his *Marsden* motion.

1   (*Vera*, at p. 980.)  This court held that the defendant had abandoned his
    unstated complaints.  "While we are aware of no precedent finding
2   abandonment of a *Marsden* motion, it is established that a defendant's
    conduct may amount to abandonment of a request to represent himself
3   under *Faretta v. California* (1975) 422 U.S. 806.  [Citations.]  If a
    defendant can abandon his request to substitute himself for counsel, a
4   defendant can abandon his request to substitute another counsel.  We
    conclude that defendant abandoned his unstated complaints about counsel
5   by not accepting the court's invitation to present them at a later hearing."
    (*Vera*, at ¶. 981-982.)
6          In the present case, defendant also abandoned his request for
    substitute counsel.  After writing his letter, defendant indicated at the
7   change of plea hearing that he had received adequate time to discuss his
    case with his counsel and that he was entering his plea freely and
8   voluntarily.  He did not mention any concerns regarding his trial counsel at
    that time.  Defendant also told his probation officer that he had "previously"
9   wanted a *Marsden* hearing.  Defendant's *Marsden* letter was then filed prior
    to his sentencing hearing.  At this hearing, defendant was quite clear in
10  expressing his concerns about his right to a hearing regarding any
    restitution fund fine.  After the trial court answered defendant's questions, it
11  then asked whether there was "anything further in this matter."  Defendant
    did not refer to his *Marsden* request or any issue regarding trial counsel.
12  Since defendant abandoned his request for substitute counsel, the trial court
    did not err by failing to hold a *Marsden* hearing.
13         Defendant's reliance on *People v. Olivencia* (1988) 204 Cal.App.3d
    1391 is misplaced.  In *Olivencia*, the defendant filed a *Marsden* motion, but
14  the trial court "apparently overlooked this notice and a *Marsden* hearing
    was never held."  (*Id.* at p. 1400.)  The People conceded *Marsden* error.
15  (*Ibid.*)  Contrary to defendant's claim, the facts in *Olivencia* are not
    identical to those in the present case.  Here, defendant indicated no
16  problems with trial counsel at the change of plea hearing and told his
    probation officer that he had previously wanted a *Marsden* hearing.
17  Though he articulated his concerns about his right to a restitution fund fine
    hearing and was specifically asked whether there were any other issues,
18  defendant did not mention his *Marsden* request.

19  *Brown*, 2008 WL 3138211 at *2-3 (edited for formatting).

20         Applying the standard set forth by *Richter*, *Williams*, and *Lambert*, it is clear that

21  the California Court of Appeals did not adjudicate the merits of Petitioner's Sixth

22  Amendment claim.  *See, e.g., Lambert*, 393 F.3d at 969.  In order to have done so, the

23  state court would have needed to address the "substance" of the claim.  *Id.*  Petitioner's

24  claim is that his Sixth Amendment right to effective assistance of counsel was violated

25  because an irreconcilable difference between himself and his court-appointed attorney

26  was left unaddressed by the trial court.  (Pet. at 6.)  The substance of that claim is whether

27  Petitioner's court-appointed attorney was constitutionally sufficient, not whether

28  Petitioner abandoned his *Marsden* motion by failing to satisfy a procedural requirement.

The failure to satisfy a procedural requirement, however, is precisely what the California Court of Appeal relied upon in denying the claim.  Because Petitioner did not orally raise his filed and pending *Marsden* motion in open court, the appellate court held that Petitioner was procedurally barred from having his claim adjudicated on the merits.  *See Brown*, 2008 WL 3138211, at *2-3.  The state court also found that statements made by a prisoner to a probation officer outside of court, while in prison, may be sufficient to constitute an abandonment of a pending substitution of counsel motion.[5]  *Id.*  Whether the Sixth Amendment claim had substantive merit, i.e., whether an irreconcilable conflict existed between Petitioner and his attorney, was never addressed.

In support of its finding of procedural abandonment, the California Court of Appeal relied primarily on *People v. Vera*, 122 Cal. App. 4th 970 (2004).  *Vera* held that when a defendant does not accept a trial court's request to present his or her reasons for substitution of counsel, abandonment may be found.  *See id.* at 981-82.  *Vera* only speaks to the circumstances in which procedural abandonment may be found from a defendant's post-*Marsden* motion conduct, not to the standard for determining whether a defendant's court-appointed counsel was constitutionally sufficient.  *Id.*

The California Court of Appeal's citation to *Marsden* does not compel a different conclusion, even under the *Baker* approach.  *See Baker*, 221 F.3d at 1112.  While *Marsden* relies upon federal authority, the state court's application of *Marsden* to Petitioner's case is not consistent with that federal precedent or even with *Marsden* itself. *See Williams*, 646 F.3d at 640.  *Marsden* relies on the seminal case of *Gideon v. Wainwright*, 372 U.S. 335 (1963), as well as *Brubaker v. Dickson*, 310 F.2d 30 (9th Cir. 1962), for its holding that state trial courts have a duty to hear a criminal defendant's reasons for requesting substitution of counsel.  *Marsden*, 2 Cal. 3d at 123-24.  Explaining these federal opinions, the *Marsden* court stated that, "[a] judicial decision made without

---

[5] There is no evidence in the record, nor does the probation officer's report state, that the word "previously" was ever actually used by Petitioner to describe his desire for a *Marsden* hearing.

giving a party an opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.'"  2 Cal. 3d at 124 (quoting *Spector v. Superior Court*, 55 Cal. 2d 839, 843 (1961)).  Yet, this is precisely what occurred in Petitioner's case, to the opposite result of the outcome in *Marsden* itself. Because the California Court of Appeal's adjudication in Petitioner's case was not "consistent with the reasoning" of the federal precedent underlying *Marsden*, in no way did its indirect citation to federal precedent constitute an adjudication on the merits.  *See Baker*, 221 F.3d at 1112.

Indeed, the fact that no *Marsden* hearing was ever conducted by the state trial court made a substantive adjudication by the state appellate court nearly impossible.  *See Schell*, 218 F.3d at 1027 ("[B]ecause no court has examined [Petitioner's] claims, at this stage of the case we must take his allegations at face value"); *see also Marsden*, 2 Cal. 3d at 123 ("A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request.").

Accordingly, this Court finds that there was no adjudication of Petitioner's claim on the merits in state court.  The claim is nonetheless precluded from federal collateral review if the state procedural bar—here the finding of abandonment—rests upon an adequate and independent state ground.  Respondent, in his answer to the order to show cause, characterizes Petitioner's claim as "procedurally barred," but does not address whether the bar precludes federal review as a matter of federal constitutional law.  (Resp't Memo. at 5.)  The Court will sua sponte address this issue.

> b. *Adequacy of State Court's Adjudication of Procedural Abandonment*

Unlike the procedural posture presented in *Williams*, where the state court failed to even address the Petitioner's Sixth Amendment claim, here, the state court did make an adjudication, just not one on the merits.  *Compare Williams*, 646 F.3d at 638-39, *with Brown*, 2008 WL 3138211, at *2-3.  As a result, this Court must consider, as a federal question, whether the California Court of Appeal's finding of procedural abandonment

1  rests upon an adequate and independent ground of state law so as to preclude federal

2  review of Petitioner's request for habeas relief.  *See Douglas*, 380 U.S. at 422.

3  　　　As discussed above, the California Court of Appeal based its decision to affirm the

4  judgment of the trial court on the ground that Petitioner "abandoned his request for

5  substitute counsel" and, as a result, "the trial court did not err by failing to hold a

6  *Marsden* hearing."  *Brown*, 2008 WL 3138211 at *1-2.  As also noted above, the court

7  based the abandonment finding on: (1) Petitioner's failure to personally raise the issue in

8  open court; and (2) a statement in the probation officer's report that Petitioner had

9  "previously" wanted a *Marsden* hearing.

10  　　　The first California procedural rule that may be inferred from this opinion is that a

11  defendant represented by court-appointed counsel has a duty to bring a *Marsden* motion

12  to the trial court's attention in open court despite already having filed said motion pro se.

13  *See Brown*, 2008 WL 3138211, at *2-3.  An additional procedural rule that may be

14  inferred is that a defendant has a duty to avoid making statements out of court that could

15  be construed as abandonment of a *Marsden* motion if he seeks an adjudication of that

16  motion.  *Id.*

17  　　　Because this Court has already found that there was no adjudication of Petitioner's

18  federal claim on the merits, even indirectly, the opinion of the California Court of Appeal

19  is sufficiently "independent" of federal law for purposes of the adequate and independent

20  state grounds doctrine.  *See Coleman*, 501 U.S. at 732-35.  But, if the aforementioned

21  procedural rules are unclear, uncertain, not consistently applied, or not well-established,

22  then the procedural bar is not "adequate" as a matter of federal law, and the Court will

23  review Petitioner's claim de novo.  *See Melendez*, 288 F.3d at 1124.  An additional and

24  independent inquiry is whether Petitioner could have been apprised of these procedural

25  rules as applied by the appellate court at the time he needed to abide by them in the trial

26  court proceeding.  *See NAACP*, 357 U.S. at 457; *Barr*, 378 U.S. at 149; *Moore*, 148 F.3d

27  at 709.  If not, this constitutes a separate ground for a finding of inadequacy of the state

28  procedural bar.

The California Court of Appeal began its analysis by noting the well-established rule under California law that, "[w]hen a defendant requests substitution of counsel, the trial court has a duty to listen to his or her specific reasons for this request." *Brown*, 2011 WL 3138211 at *2 (quoting *Marsden*, 2 Cal. 3d at 123-24). The Ninth Circuit has expressly endorsed this same rule as "well-established and clear" federal law required by the Sixth Amendment and has enforced it on collateral habeas review in nearly identical circumstances to the present case. *See Schell*, 218 F.3d at 1025. The California Court of Appeal supplemented this facially-adequate procedural rule, however, with its citation to *Vera*, which held that post-*Marsden* motion conduct can result in abandonment of the motion. *Vera*, 122 Cal. App. 4th at 981-82. In *Vera*, the trial court conducted an initial *Marsden* hearing in response to the defendant's oral request for substitution of counsel, but "ultimately ran out of time because a jury was arriving on another case." *Vera*, 122 Cal. 4th at 973. After orally denying the *Marsden* motion, the trial court "invited defendant to renew his motion at [his upcoming *Romero*] hearing." *Id.* The defendant failed to do so. *Id.* Upon review, the *Vera* court concluded that:

> [W]hile a trial court is required by *Marsden* to inquire into all of a defendant's complaints about his appointed counsel, the inquiry need not occur at a single hearing . . . . When a trial court runs out of time to continue hearing a defendant's complaints, the court may deny substitution of counsel based on the stated complaints *so long as the defendant is afforded a later opportunity to articulate his yet-unstated complaints.*

Vera, 122 Cal. App. 4th at 981 (emphasis added). While this holding is not a facially uncertain or unclear procedural rule, the rule can be adjudged inadequate for purposes of federal adequacy scrutiny if it was applied in an unclear, uncertain, or not-well-established manner, such that Petitioner could not have been apprised of the rule. *See Melendez*, 288 F.3d at 1124; *NAACP*, 357 U.S. at 457; *Barr*, 378 U.S. at 149; *Moore*, 148 F.3d at 709; *see also Williams*, 646 F.3d at 641-42.

Unlike the characterization made by the state court here, in no way did *Vera* stand for the proposition that the failure to raise a pending *Marsden* motion in open court could

result in procedural abandonment. *See Vera*, 122 Cal. App. 4th at 981.[6] *Vera*'s actual

holding was that a defendant was not entitled to have all of his *Marsden* claims heard in a

single hearing, and that subsequent refusal to make those claims known in a

supplementary hearing constituted abandonment of the motion. *Id.* Upon invitation of

the trial court to have his claims heard in a supplementary proceeding, the defendant in

*Vera* declined. *Id.* That procedural posture is entirely distinguishable from the instant

case, where the state trial court *never made any inquiry* at all into the substance of

Petitioner's Sixth Amendment claim nor even acknowledged the claim. *Brown*, 2008 WL

3138211, at *1-2. To hold that the onus rests upon a defendant to raise a substitution of

counsel motion in open court after already filing such motion would be to reverse the rule

established under *Marsden*.

Indeed, there is not a single published California opinion that holds that conduct

similar to Petitioner's constitutes abandonment of a pending *Marsden* motion. One case,

*People v. Washington*, 27 Cal. App. 4th 940, 942-44 (1994), declined to reach whether

the trial judge had a duty to consider a *Marsden* motion that was made orally in front of a

different judge but never heard. The state appellate court determined that any error was

harmless where there was no showing that the *Marsden* motion would have been granted

or that the defendant would have achieved a more favorable result had it been granted.

*Id.* at 944. The court never held that the defendant had abandoned his *Marden* motion.

Accordingly, *Washington* is inapposite to this Court's inquiry.

There are, however, clear analogues to the instant procedural posture in which the

California courts have found *Marsden* error and vacated the judgment with remand

instructions to hold an evidentiary hearing. *See, e.g., People v. Olivencia*, 204 Cal. App.

3d 1391, 1400-02 (1988). In *Olivencia*, the defendant-appellant "filed a written notice

which specifically cited the *Marsden* case and requested that a 'Marsden hearing be held

---

[6] Nor did *Vera* even address whether a statement in a probation report could result in
procedural abandonment.

before any other pretrial hearing . . . .' The notice stated that 'the motion will be made orally by the defendant stating the grounds for the motion at this [sic] time.'" *Id.* at 1400. A *Marsden* hearing was never held, and the appellate court found reversible error. *Id.* at 1401-02. The court, following *People v. Minor*, 104 Cal. App. 3d 194, 199 (1980), remanded to the trial court for a hearing on the putative attorney-client conflict. *Id.*[7] The court never considered the defendant's post-*Marsden* motion conduct. The California courts have consistently endorsed the requirement that a trial court listen to a defendant's complaints about his attorney, without ever adopting the procedural rules enforced in the instant case. *See, e.g.*, *People v. Silva*, 25 Cal. 4th 345, 367 (2001); *People v. Hart*, 20 Cal. 4th 546, 604 (1999); *People v. Barnett*, 17 Cal. 4th 1044, 1091 (1998); *People v. Majors*, 18 Cal. 4th 385, 411-13 (1998); *People v. Horton*, 11 Cal. 4th 1068, 1101-03 (1995); *People v. Wharton*, 53 Cal. 3d 522, 580 (1991); *People v. Hill*, 148 Cal. App. 3d 744, 755 (1983); *Hidalgo*, 22 Cal. 3d at 827; *People v. Brown*, 26 Cal. App. 3d 825, 833-46 (1972); *see also Schell*, 218 F.3d at 1021, n.3 ("The usual remedy in California for failure to hold a Marsden hearing is to remand the case to the trial court for a post-trial *Marsden* hearing, giving the trial court wide latitude to correct any error it may uncover.") (citing *Olivencia*, 203 Cal. App. 3d at 1400-02).

As the ground for the California Court of Appeal's finding of procedural abandonment in the instant case — Petitioner's failure to raise the pending *Marsden* motion — is not supported by any precedent, it must be adjudged inadequate as a matter of federal law. *See Melendez*, 288 F.3d at 1126. The absence of any supporting California precedent precludes the possibility of the procedural bar being "clear" or "well-established." *See id.* Accordingly, because there was no existing precedent that could have made Petitioner aware of a putative duty to orally remind the trial court of the motion, he could not have amended his conduct to conform with such rule at the trial

---

[9] Prior to *People v. Minor*, the California courts considered *Marsden* error per se prejudicial and would reverse the judgment with instructions for a new trial. *See, e.g*, *People v. Hidalgo*, 22 Cal. 3d 826, 827 (1978).

court level. *NAACP*, 357 U.S. at 457; *Barr*, 378 U.S. at 149; *Moore*, 148 F.3d at 709.

Nor has this Court found precedent holding that a defendant's statement to a probation officer can be used to show abandonment of any motion, let alone a motion for substitution of counsel. To be sure, the California Court of Appeal did not cite to a single case in support of this proposition. As a result, that finding is also adjudged inadequate. The court in *Marsden* addressed a strikingly similar issue. There, the defendant may have misused the word "transcript," in arguing that the "court transcript" could reveal the inadequacy of his counsel. *Marsden*, 2 Cal. 3d at 121. The State argued that nothing off the record should be evaluated because of the defendant's word choice. *Id.* at 124. The California Court of Appeal rejected the argument, stating:

> [Marsden's] reference to the "transcript" may have been his fumbling method of describing the totality of occurrences in the course of his trial, and not a specific use of a term of art. The semantics employed by a lay person in asserting a constitutional right should not be given undue weight in determining the protection to be accorded that right. Indeed, the very reason we are compelled to resort to speculation as to the defendant's understanding of the word "transcript" is that he was not permitted to explain his meaning and to proceed with enumeration of asserted instances of inadequate representation. Such an explanation would have enabled the trial court to determine the extent to which defendant's claims were reflected in the "court's transcript." As it stands, we are unable to determine the basis for the defendant's motion or whether the defendant's showing could have been sufficient to justify ordering a substitution of attorneys.

*Marsden*, 2 Cal. 3d at 124. Similarly here, even assuming Petitioner used the word "previously" to describe his desire for a *Marsden* hearing, no weight should be accorded to whether this word indicated abandonment of his pending *Marsden* motion.

Accordingly, the Court finds that the state law procedural grounds for denying Petitioner's claim on state appeal are inadequate as a matter of federal law to preclude adjudication of Petitioner's constitutional claim, *see Douglas*, 380 U.S. at 422, and will review Petitioner's Sixth Amendment claim de novo, *see Cone*, 129 S. Ct. at 1784.

## B.   Legal Claim and Analysis

Although Petitioner directly complains of the state trial court's failure to conduct a *Marsden* hearing, the only actionable implication of that claim on collateral review is

1   whether the state trial court permitted Petitioner to suffer ineffective assistance of

2   counsel.  *Schell*, 218 F.3d at 1204-05.  In other words, the issue on federal habeas review

3   is the substance of Petitioner's unadjudicated Sixth Amendment claim.  *See id.*

4          1.   <u>Sixth Amendment Claim</u>

5         The Sixth Amendment grants criminal defendants who cannot afford to retain

6   counsel the entitlement of an effective, court-appointed attorney.  U.S. Const. amend. VI.

7   This right attaches at all "critical" stages of the criminal proceedings, *United States v.*

8   *Wade*, 388 U.S. 218, 227-28 (1967), including arraignment, *Hamilton v. Alabama*, 368

9   U.S. 52, 53 (1961), and sentencing, *Gardner v. Florida*, 430 U.S. 349, 358 (1977).  A

10  claim of ineffective assistance of counsel is cognizable as a claim of denial of this right to

11  counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  A criminal defendant who

12  cannot afford to retain counsel, however, has no right to counsel of his own choosing.

13  *See Wheat v. United States*, 486 U.S. 153, 159 (1988).  Nor is he entitled to an attorney

14  who likes and feels comfortable with him.  *See United States v. Schaff*, 948 F.2d 501, 505

15  (9th Cir. 1991).  "[T]he ultimate constitutional question the federal courts must answer

16  here is . . . whether . . . the conflict between [the Petitioner] and his attorney had become

17  so great that it resulted in a total lack of communication or other significant impediment

18  that resulted in turn in an attorney-client relationship that fell short of that required by the

19  Sixth Amendment."  *Schell*, 218 F.3d at 1026.  Because the denial of an indigent criminal

20  defendant's motion for substitution of counsel may violate his or her Sixth Amendment

21  right to counsel, *see Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005), the

22  complete failure of a state court to hear a motion for substitution of counsel indicts the

23  same putative constitutional violation, *see Schell*, 218 F.3d at 1027.

24        Because the state trial court failed to inquire in the slightest as to the nature and

25  extent of Petitioner's conflict with counsel, the events surrounding the putative collapse

26  of this attorney-client relationship exist almost entirely outside of the record.  If the

27  relationship between Petitioner and his trial counsel had deteriorated to the point where it

28  engendered a constitutional violation, *see Morris*, 461 U.S. at 13-14, there would be no

1   way for the courts to know without conducting an evidentiary hearing into the matter, *see*

2   *Schell*, 218 F.3d at 1027-28.

3       When Petitioner submitted his pro se letter to the state trial court seeking a

4   *Marsden* hearing, he voiced a seemingly substantial complaint about his attorney.  The

5   fact that he had been having problems with Mr. Lopez for months, such that he felt the

6   need to ask two other public defenders for assistance, suggests the possibility of a

7   constructive denial of counsel.  (*See* CT at 230A.)  Moreover, Petitioner expressed to his

8   probation officer weeks later that he (1) believed his attorney was working with the

9   District Attorney and the state trial judge, and (2) did not understand his strike priors were

10  being alleged.  (*See id.* at 194.)   This confirms that the attorney-client relationship had

11  not improved by the conclusion of the case.

12      This does not mean, however, that Petitioner necessarily suffered a Sixth

13  Amendment violation.  As the *Schell* court stated, "[i]t may be the case, for example, that

14  because the conflict was of [the petitioner's] own making, or arose over decisions that are

15  committed to the judgment of the attorney and not the client, in fact he actually received

16  what the Sixth Amendment required in the case of an indigent defendant, notwithstanding

17  the State trial court's failure to inquire."  218 F.3d at 1026.  That being said, "it is

18  well-established and clear that the Sixth Amendment requires on the record an

19  appropriate inquiry into the grounds for [a substitution of counsel] motion, and that the

20  matter be resolved on the merits before the case goes forward."  *Schell*, 218 F.3d at 1025;

21  *see also Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991).  Therefore, the

22  appropriate remedy for Petitioner is to hold an evidentiary hearing in this Court to

23  determine: (1) the nature and extent of the putative conflict between Petitioner and his

24  trial attorney; and (2) whether that putative conflict deprived Petitioner of the

25  representation he was guaranteed by the Sixth Amendment.  *See Schell*, 218 F.3d at 1026-

26  28.

27      Unlike *Schell* where the petitioner proceeded to trial, however, the instant petition

28  arises from a guilty plea.  This raises the question of whether Petitioner waived his

1    ineffective assistance of counsel claim by pleading guilty.  If Petitioner's plea did not

2    waive the entirety of his Sixth Amendment claim, then an evidentiary hearing remains

3    proper.

4         2.    The Effect of Petitioner's Guilty Plea

5         A defendant who pleads guilty cannot later raise independent claims in a federal

6    habeas corpus proceeding relating to the deprivation of constitutional rights that occurred

7    before the plea.  *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973).  The only

8    challenges left open in federal habeas corpus after a guilty plea are the voluntary and

9    intelligent character of the plea and the nature of advice of counsel to plead.  *Hill v.*

10   *Lockhart*, 474 U.S. 52, 56-57 (1985); *Tollett v. Henderson*, 411 U.S. at 267.

11        The Due Process Clause of the Fourteenth Amendment requires that a guilty plea

12   be both knowing and voluntary because it constitutes a waiver of three constitutional

13   rights: the right to a jury trial, the right to confront one's accusers, and the privilege

14   against self-incrimination.  *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  It does

15   not, however, require a state court to enumerate all the rights a defendant waives when he

16   enters a guilty plea as long as the record indicates that the plea was entered voluntarily

17   and understandingly.  *See Rodriguez v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir. 1986);

18   *Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974).  A plea is not "knowing" or

19   "intelligent" if the defendant is without the information necessary to properly assess "the

20   advantages and disadvantages of a trial as compared with those attending a plea of

21   guilty."  *Brady v. United States*, 397 U.S. 742, 754-55 (1970).  Furthermore, a plea is not

22   voluntary unless it is "entered by one fully aware of the direct consequences" of the plea.

23   *Id.* at 755 (internal quotation and citation omitted); *see also Carter v. McCarthy*, 806 F.2d

24   1373, 1375 (9th Cir. 1986).  A defendant must be advised of the range of allowable

25   punishment that will result from the plea.  *See Torrey v. Estelle*, 842 F.2d 234, 235 (9th

26   Cir. 1988); *United States ex rel. Pebworth v. Conte*, 489 F.2d 266, 267 (9th Cir. 1974).

27        Here, at a minimum, Petitioner has a right to an evidentiary hearing in this Court

28   on whether his Sixth Amendment right to counsel was violated *post-plea*, such as whether

counsel provided ineffective assistance at sentencing or whether counsel should have pursued a motion to withdraw the plea. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977) (right to effective assistance of counsel attaches at all critical stages including sentencing). The Court will reserve ruling on whether the evidentiary hearing should also inquire into the adequacy of counsel *pre-plea* until the parties have had an opportunity to submit further briefing on this issue as set forth in this order's Conclusion. While, in the instant petition, Petitioner does not explicitly attack the sufficiency of his plea, his Sixth Amendment claim certainly implicates the voluntary and intelligent nature of the plea, specifically whether Petitioner entered the plea on the advice of competent counsel. As noted above, Petitioner's plea hearing was halted at several points so that counsel could explain parts of the plea and its ramifications. (CT at 11-13.) As also noted, Petitioner told his probation officer that "he did not know his Strike Priors were being alleged until last week." (CT at 194.) Because the plea hearing took place the week before Petitioner's interview with his probation officer, it is unclear whether Petitioner fully understood, *before* entering the plea, how California's Three Strikes Law would affect his sentence. This raises a question as to whether Petitioner knew the "direct consequences" of his plea. *Brady*, 397 U.S. at 755. Accordingly, the Court cannot definitively say that the evidentiary hearing should be limited to post-plea proceedings.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Petitioner receive an evidentiary hearing in this Court to determine: (1) the nature and extent of the putative conflict between Petitioner and his trial attorney; and (2) whether that putative conflict deprived Petitioner of the representation he was guaranteed by the Sixth Amendment.

IT IS FURTHER ORDERED that Petitioner shall be referred to the Federal Public Defender's Office for their prompt selection of a qualified attorney to represent petitioner at the evidentiary hearing. *See United States v. Duarte-Higareda*, 68 F.3d 369, 370 (9th Cir. 1995) (holding Rule 8(c) of the Rules Governing Section 2254 Cases makes the appointment of counsel mandatory pursuant to 18 U.S.C. § 3006A(g) whenever an

evidentiary hearing is required in a habeas action; failure to appoint counsel for an evidentiary hearing is clear error, requiring summary reversal).[8]  Selected counsel shall file an appearance as soon as he or she is selected.

All proceedings in this action are stayed until four weeks from the date counsel appears for Petitioner.  Once counsel appears, the Court will set a schedule for supplemental briefing on the scope of the evidentiary hearing.  Of particular importance in supplemental briefing is whether the putative Sixth Amendment violation also infected the constitutionality of the plea.

The Clerk shall serve a copy of this order on the Federal Public Defender's Office, as well as on the parties.

IT IS SO ORDERED.

DATED: October 14, 2011

JEFFREY S. WHITE
United States District Judge

---

[8]The appointment is made pursuant to § 3006A.

1

UNITED STATES DISTRICT COURT

2

FOR THE

3

NORTHERN DISTRICT OF CALIFORNIA

4

5

6

DARRYL BROWN,

Case Number: CV09-04663 JSW

Plaintiff,

7

**CERTIFICATE OF SERVICE**

v.

8

JAMES WALKER et al,

9

Defendant.

10

_____/

11

12

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

13

14

That on October 14, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

15

16

17

Darryl W. Brown J-92658
CA State Prison-Folsom(New)

18

P.O. Box 290066
Represa, CA 95671

19

20

Dated: October 14, 2011

21

*Jennifer Ottolini*

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

22

23

24

25

26

27

28